IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANET MOORE,                                        Case No. 3:12-cv-02233-MA

                  Plaintiff,                              OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

MERRILL SCHNEIDER
P.O. Box 14490
Portland, OR 97293

      Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

ERIN F. HIGHLAND
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Janet Marciel Moore seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and a period of disability benefits under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the decision of the Commissioner is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2010, plaintiff filed applications for a period of disability benefits, disability insurance benefits, and supplemental security income. Plaintiff alleges disability beginning on November 30, 2009, due to sciatic nerve pain, chronic pain, arthritis, chronic nausea, fractured ribs, depression, anxiety, hepatitis C, acid reflux, and a fractured right knee. Plaintiff alleges that the following also prevent her from sustaining full time employment: leg length discrepancy, insomnia, shortness of breath, fecal incontinence, depression, post-traumatic stress disorder, and poly-substance abuse currently in remission.

Plaintiff's claims were denied initially on June 2, 2010, and upon reconsideration on September 15, 2010. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An

ALJ held a hearing on June 16, 2011, at which plaintiff appeared with her representative and testified. A vocational expert, Hanoch Livneh, also appeared and testified. On June 23, 2011, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was 53 years old on the date of her alleged onset of disability. Plaintiff has a high school education and has completed one year of college. Plaintiff has past relevant work as a bookbinder, construction laborer, roofer helper, and router operator.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. A claimant seeking a period of disability benefits and DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. <u>See</u> 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), 416.971 *et seq.*

At step two, the ALJ found that plaintiff had the following severe impairments:  degenerative joint disease of the hands and nausea. <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment. <u>See</u> 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity to perform less than a full range of medium work and is limited to no more than frequent use of the hands for handling or fingering. <u>See</u> 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

At step four, the ALJ found plaintiff able to perform her past relevant work as a bindery worker and a router operator. <u>See</u> 20 C.F.R. §§ 404.1565, 416.965.

Accordingly, the ALJ concluded that plaintiff is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ improperly assessed plaintiff's credibility; (2) the ALJ failed to properly evaluate the opinion of non-examining physician K. McAuliffe, M.D.; (3) the ALJ failed to properly evaluate the opinion of Lynne Carter, a vocational employment specialist; and (4) the ALJ improperly evaluated lay testimony from Amanda Crist, plaintiff's daughter.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039. "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Valentine, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Commissioner Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at

1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001); <u>Batson</u>, 359 F.3d at 1193.

<b><u>DISCUSSION</u></b>

I.   <b><u>Plaintiff's Credibility</u></b>

   A.   <b>Standards</b>

   To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529, 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  <u>Carmickle v. Commissioner Soc. Sec. Admin.</u>, 533 F.3d 1155, 1166 (9th Cir. 2008); <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007).

   The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  <u>Tommasetti</u>, 533

F.3d at 1039;  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

### B.    Analysis

At the hearing, plaintiff testified that she lives in a fifth wheel trailer, is able to shop, prepare simple meals, has no difficulty cleaning her home, and has no difficulty with self-care. Plaintiff testified that she has a current driver's license and can drive herself to the grocery store.

Plaintiff testified that her major impediments to working full time are "depression and nerves and my stomach."   Tr. 46. Plaintiff stated that she has nausea all day, and that her current nausea medication is not effective and when combined with another medication, causes restless leg syndrome preventing her from sleeping.  Plaintiff described that when she wakes, she feels nauseated for a few hours until she has a painful bowel movement, at which point she feels better.  Plaintiff testified that her pain and bloating, however, return within a half hour.   Plaintiff further testified that she uses medical marijuana four to five times a day for nausea.

Plaintiff testified that prior injuries to her hands cause her to experience hand pain when performing repetitive work. Plaintiff testified that she experiences low back pain when she stands at work, for which she has been prescribed muscle relaxers, but noted that she was not currently taking medication for back pain. Plaintiff admitted that she had not discussed her sciatic nerve and back issues with her current physician because she is focusing on alleviating her nausea.

Plaintiff testified that she underwent a two-week work trial arranged through Oregon vocational rehabilitation in April of 2011, during which she missed four days out of 10 due to nausea and stomach problems.

In a March 28, 2010 Function Report, plaintiff described that her nausea limits her ability to work. Plaintiff also reported frequent migraines and stress headaches, difficulty sleeping, and that her pain and depression limit her ability to walk, lift, squat, bend, stand, concentrate, and use her hands. Plaintiff stated she could walk a quarter mile, and must rest after 10 to 15 minutes, otherwise the pain is intolerable. Plaintiff indicated that she had no difficulties reading, no difficulties following instructions, and no difficulties getting along with supervisors or co-workers. Plaintiff described that she cannot handle stress, and that her left leg is shorter than her right. Plaintiff noted that her back and hand pain lasts one to three days and that standing,

bending, twisting or gripping, or constant usage increase her pain. Plaintiff stated that she feels fatigued every day, and feels nauseous after working for a short period of time. Tr. 215-25.  In an October 20, 2010 Disability Report, plaintiff reported that her depression and nausea have worsened, she has started treatment for depression, and lesions have developed on her cervix.

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

Contrary to plaintiff's assertion, the ALJ provided three reasons, citing specific record evidence, that undermine her subjective complaints: (1) lack of objective medical evidence; (2) her activities of daily living were inconsistent with total disability; and (3) poor work history.

### 1.    lack of objective medical evidence.

When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant.  Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007); Morgan v. Commissioner Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  The ALJ discussed the lack of medical evidence with respect to each of plaintiff's various alleged impairments.

Concerning plaintiff's allegations of disabling depression, the ALJ found that her depression appears intermittent and well-controlled with medication. In 2008, plaintiff reported some depression due to a pending divorce, and her depression improved on anti-depressants. As the ALJ indicated, in January, May, and July of 2009, plaintiff denied any depression, anxiety or agitation, and stopped taking medication by the time of her alleged onset date. Tr. 328, 342, 347. As the ALJ noted, in November of 2009, plaintiff described feeling depressed to her medical marijuana provider, however, she was not taking anti-depressants at that time. Tr. 356. Plaintiff restarted anti-depressants in October of 2010, and reported improvement on Paxil. Tr. 422. Moreover, the ALJ found that plaintiff's depression was nonsevere, a finding plaintiff does not challenge. Based on the lack of objective medical evidence to support plaintiff's contention of disabling depression, the ALJ could infer that her depression was not as severe as alleged, and appropriately discounted her credibility on this basis. See Burch, 400 F.3d at 681 (discounting claimant's credibility where complaints of severe depression not supported by medical record).

With respect to plaintiff's chronic nausea, the ALJ correctly noted that it has not been associated with or connected to her hepatitis C in any fashion, and that plaintiff's hepatitis C is stable and asymptomatic. The ALJ also correctly indicated that

plaintiff's laboratory findings, including a 2009 abdominal ultrasound and endoscopy, have been normal, except for a small hiatal hernia. Moreover, the ALJ discussed that in 2008, plaintiff reported to her then treating Nurse Practitioner Alice Johnson that her nausea was well-controlled with Prilosec. In July of 2009, plaintiff reported to her then treating Nurse Practitioner Deborah Rupae that Nexium was helpful, but that she had run out, and plaintiff resorted to the medicine prescribed by her gastroenterologist. At the hearing plaintiff testified that medications were not helpful.

As the ALJ discussed, in November of 2009, plaintiff wanted to switch to medical marijuana for her nausea. When plaintiff requested that Nurse Rupae send records to the medical marijuana provider, Nurse Rupae instructed plaintiff that her office would not support that decision, and that if plaintiff proceeded, she would need to switch primary care providers. As the ALJ detailed, plaintiff told Nurse Rupae she would switch providers in order to receive medical marijuana. Lastly, the ALJ noted that after plaintiff stopped seeing Nurse Rupae, she has received only sporadic medical care. As the ALJ correctly indicated, plaintiff testified that she continues to take medical marijuana four to five times a day, despite acknowledging that it provides only limited relief for her nausea. Tr. 424. The ALJ's findings are supported by substantial evidence in the record.

Concerning plaintiff's degenerative joint disease in plaintiff's hands, the ALJ discussed plaintiff's history of hand injuries, and that in 2008, plaintiff reported some hand pain at night, and that her treating physician at the time, Michelle John, M.D., suspected arthritis or carpal tunnel and gave her wrist splints to wear at night. Tr. 275-79. The ALJ detailed that x-rays of plaintiff's hands in October of 2008 showed modest findings of left hand degenerative disease and scattered findings of right hand degenerative disease in the interphalangeal joints. Tr. 282-84. The also ALJ noted a May 7, 2010 physical capacities examination performed by Matthew Hansen, M.D., finding plaintiff's grasping ability was "completely intact" and that plaintiff demonstrated no "diminution of function with repetition." As the ALJ detailed, Dr. Hansen found no limitations with plaintiff's ability to grasp and manipulate large and small objects. Tr. 386.

Furthermore, the ALJ discussed at length plaintiff's work attempt through vocational rehabilitation in March and April of 2011 as it related to her hand pain. The ALJ discussed a summary of plaintiff's performance completed by Lynne Carter, and employment specialist, who noted that plaintiff was installing spikes on shoes "which requires a lot of hand dexterity/fine motor skills," and that plaintiff was able to use tools to fix defects in the shoes, and that plaintiff was "as productive as others doing the same work." Tr. 449. The ALJ's findings concerning

plaintiff's alleged hand pain are supported by substantial evidence
in the record.   Based on the lack of objective medical evidence
supporting the severity of functional limitations resulting from
plaintiff's alleged hand pain, the ALJ could discredit her on this
basis.

Concerning plaintiff's alleged back pain, neck pain, and joint
pain, the ALJ found that Dr. Hansen's May 7, 2010 physical
examination undercut her allegations of disabling pain.  As the ALJ
detailed, Dr. Hansen determined that plaintiff had full range of
motion in her joints, had full motor strength in all extremities,
negative Spurling's test, and negative straight legs tests for
radiculopathy.   Tr. 386.   The ALJ noted that Dr. Hansen observed
that plaintiff walked around the examination room without
difficulty, transferred from the chair to table without difficulty,
and removed her slippers without difficulty.   To be sure, Dr.
Hansen found no physical functional limitations based on his
examination.

The ALJ also discussed that in June of 2009, plaintiff
telephoned her then treating Nurse Practitioner Rupae, complaining
of back pain from standing on a hard floor all day and requesting
pain medication, and that Nurse Rupae responded that pain
medication would not be given.  As the ALJ correctly notes, aside
from this singular complaint, there are no medical records
indicating that plaintiff has sought treatment for back pain.   The

13 - OPINION AND ORDER

ALJ's findings are wholly supported by substantial evidence in the record.

Based on the ALJ's exhaustive review of plaintiff's medical records, the ALJ discredited plaintiff, finding that her impairments could have been controlled or remediated with medication or treatment.   The ALJ considered plaintiff's lack of insurance, noting it was a concern, but determined "it is not a basis for disability."   The ALJ further found that "there is no evidence that [plaintiff] has attempted to avail herself of all available treatment that would be available at no charge or on a sliding scale."   Tr. 28.

Plaintiff now complains that the ALJ erred in discounting her credibility on the basis that she failed to pursue or follow medical treatment without making a further inquiry of plaintiff at the hearing.   According to plaintiff, the ALJ had a duty to develop the record further by asking plaintiff questions about her lack of medical treatment or follow up relying on SSR 96-7p.   SSR 96-7p provides in relevant part:

> the adjudicator must not draw any inferences about an
> individual's symptoms and their functional effects from
> a failure to seek or pursue regular medical treatment
> without first considering any explanations that the
> individual may provide, or other information in the case
> record, that may explain infrequent or irregular medical
> visits or failure to seek medical treatment.   The
> adjudicator may need to recontact the individual or
> question the individual at the administrative proceeding
> in order to determine whether there are good reasons the
> individual does not seek medical treatment or does not
> pursue treatment in a consistent manner. The explanations

provided by the individual may provide insight into the
individual's credibility.

SSR 96-7p, p. *7-8.

The Commissioner responds that the ALJ was not required to
make any additional inquiry of plaintiff because the record was
sufficiently developed, and contained evidence showing that
plaintiff lacked financial resources and insurance as the reason
plaintiff did not seek treatment. In her reply, plaintiff argues
that the ALJ failed to consider other reasons in the record before
making the credibility determination, citing an out-of-district
case, Graham v. Astrue, No. CV 12-00425-JEM, 2012 WL 3627400 (D.C.
Cal. Aug. 21, 2012).

In Graham, an ALJ rejected Graham's credibility in part
because claimant Graham failed to seek medical treatment despite
his lack of financial resources and because there was no evidence
that Graham had attempted to pursue other low-cost treatment. Id.
at *8. On appeal, the Graham court concluded that the credibility
finding was erroneous, determining that the ALJ's otherwise
reasonable explanation was undermined by other evidence in the
record that the ALJ failed to take into account in the credibility
analysis. Id. Specifically, the court cited other evidence that
may have explained why Graham did not seek low-cost options,
including that Graham had "borderline intellectual functioning, was
in special education in school, suffers from depression and

auditory hallucinations and is psychiatrically disabled." Id. Graham is readily distinguishable from the facts in this case.

Unlike Graham, in this case there is no "other evidence" in the record to suggest that plaintiff is mentally impaired or incapable of seeking out other low-cost options. Unlike Graham, plaintiff's only mental impairment is depression, which she acknowledges is non-severe. And, unlike Graham, it is undisputed that plaintiff has completed a year of college and was observed to have good problem-solving skills. Tr. 449. Critically, unlike Graham, the primary reason now proffered by plaintiff for her failure to seek treatment is her lack of financial resources, which was well-documented in the record and considered by the ALJ. Because the record was neither inadequate nor ambiguous on this point, the ALJ's duty to develop the record was not triggered. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Therefore, Graham is not persuasive and provides no basis for overturning the ALJ's credibility determination.

In short, based upon the lack of objective medical evidence, including her allegedly disabling nausea, the ALJ could infer that plaintiff's failure to seek low-cost treatment options was inconsistent with the severity of her complaints, and could

discredit her on that basis.  See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)(upholding negative credibility assessment under SSR 96-7p where ALJ attributed plaintiff's failure to seek treatment to personal preference).

### 2.  activities of daily living

The ALJ also discounted plaintiff's credibility based on the fact that her alleged impairments have not interfered with her ability to perform any activities of daily living.  Where a claimant is able to perform everyday activities indicating capacities that are transferrable to a work setting, an ALJ may discredit a claimant on that basis.  Molina, 674 F.3d at 1113. And, an ALJ may discredit a claimant who may have some difficulty functioning to the extent that those activities contradict a claim of total disability.  Id.; Turner v. Commissioner of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010).  As the ALJ detailed, plaintiff lives independently, is able to perform housekeeping and all personal care, drives, shops, and prepares simple meals.  As the ALJ specifically noted, in 2010, plaintiff indicated she takes care of a small yard, cares for her dog and cat, spends time with family and watches television.  The ALJ's findings are supported by substantial evidence in the record.  The ALJ could reasonably conclude that her activities of daily living were inconsistent with the severity of her alleged impairments.

////

17 - OPINION AND ORDER

### 3.  poor work history

A poor work history is a legitimate basis upon which to discredit plaintiff. <u>Thomas</u>, 278 F.3d at 959 (upholding the ALJ's finding that claimant's poor work history "negatively reflected her credibility regarding her inability to work.").  To be sure, plaintiff's earnings records from 1997 to 2003, and again in 2007, indicate that she did not satisfy the "gainful" employment level. The ALJ's findings are supported by substantial evidence in the record.  Tr. 163.  Based on plaintiff's uncontradicted past earnings reports, the ALJ could infer that plaintiff's sparse work history before her alleged onset of disability undermined her testimony that her inability to work after her alleged onset date was due to disability.  Therefore, the gaps in plaintiff's employment history before the alleged onset of disability are substantial evidence supporting the ALJ's adverse credibility finding.

In summary, based on my careful review of the record, I conclude that the ALJ has provided specific, clear and convincing reasons for discounting plaintiff's credibility.

## II.  <u>Physician Testimony</u>

### A.  Standards

There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining (or "reviewing") physicians.  <u>Lester v. Chater</u>, 81

18 - OPINION AND ORDER

F.3d 821, 830 (9th Cir. 1995); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). Generally speaking, a treating physician's opinion carries more weight than that of an examining physician, and an examining physician's opinion carries more weight than that of a non-examining physician. Holohan, 246 F.3d at 1201. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may, however, reject the opinion of an examining physician in favor of a non-examining physician if the ALJ "gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir.1995).

An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. Tommasetti, 533 F.3d at 1041; Carmickle, 533 F.3d at 1164; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. Bray v. Commissioner Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Magallanes, 881 F.2d at 751. An ALJ also may discount a physician's opinion that is based on a claimant's discredited subjective complaints. Tommasetti, 533 F.3d at 1040.

19 - OPINION AND ORDER

**B.   Analysis**

Plaintiff argues that the ALJ failed to properly consider the opinion of non-examining physician K. McAuliffe, M.D., a medical reviewer for Oregon Vocational Rehabilitation Division.  Plaintiff suggests that the ALJ rejected Dr. McAuliff's opinion based solely on the adverse credibility determination.  Plaintiff, however, overlooks that not only did the ALJ reject Dr. McAuliffe's opinion because it was based on plaintiff's previously rejected subjective complaints, but also because it conflicted with that of examining physician John P. Takacs, D.O.  I note that Dr. McAuliffe is the only physician to opine that plaintiff's chronic nausea is disabling, and that plaintiff does not challenge the ALJ's evaluation of Dr. Takacs's opinion.

In the decision, the ALJ provided a thorough discussion of the conflicting medical evidence from Drs. McAuliffe and Takacs.  On June 24, 2010, Dr. McAuliffe reviewed plaintiff's medical history prior to plaintiff's vocational rehabilitation placement and noted that plaintiff has minimal documentation for her depression and joint pain.  Tr. 467.  As the ALJ indicated, Dr. McAuliffe opined that plaintiff's prognosis at that time was unclear, and recommended a function test and psychological evaluation to focus on current drug/alcohol use.  Tr. 29, 467.  The ALJ discussed that Dr. McAuliffe noted that plaintiff may have impaired endurance and should avoid exposure to excessive solvents or fumes.

The ALJ also set out a detailed summary of Dr. Takacs's opinion, the physician who performed the August 11, 2010, physical function test prior to plaintiff's vocational rehabilitation placement. As the ALJ indicated, Dr. Takacs specifically discussed plaintiff's nausea, opining that it might be caused by her hiatal hernia. The ALJ noted that Dr. Takacs provided plaintiff with medication samples and opined that a very inexpensive medication could be prescribed which could dramatically decrease plaintiff's symptoms and greatly increase her functionality. Tr. 28, 466. Overall, Dr. Takacs opined that plaintiff could perform medium work with some limitations. Tr. 465-66.

The ALJ also discussed an addendum to Dr. McAuliffe's opinion dated May 12, 2011, occurring after plaintiff's work attempt. As the ALJ noted, Dr. McAuliffe indicated that she reviewed Dr. Takacs's examination notes and reviewed laboratory results ruling out plaintiff's hepatitis C as a cause of her nausea. Dr. McAuliffe then opined after plaintiff's work attempt that plaintiff:

> isn't stable; she misses or has to interrupt work on the basis of her nausea but without insurance hasn't had the necessary evaluation or treatment. Once that has been done and the problem is resolved, it may be possible to consider work but at this point her primary need is medical care. Would encourage her to apply for disability.

The ALJ discussed Dr. McAuliffe's opinion at length, and discounted that opinion for the following reasons:

21 - OPINION AND ORDER

Dr. McAuliffe's opinion claimant is not stable is given some weight. However, claimant has not followed through with medical care and continues to use only medical marijuana, which she admits in not helping her nausea. While lack of insurance is of concern, it is not a basis for disability. Further there is no evidence that claimant has attempted to avail herself of all available treatment the would be available at no charge or on a sliding scale. The above residual functional capacity for a limited range of medium work better reflects the record as a whole, including the medical opinion of Dr. Takacs, an examining doctor.

Tr. 29.

I conclude the ALJ provided specific and legitimate reasons for rejecting Dr. McAuliffe's opinion that plaintiff was disabled by her nausea that are supported by substantial evidence in the record as a whole. First, as discussed above, I have concluded that the ALJ did not err in discrediting plaintiff's testimony about the severity of her nausea. The record shows that plaintiff began treating with medical marijuana in November of 2009, and continues to use it four to five times a day, despite that it does not alleviate her nausea. As the ALJ found, it is unclear whether plaintiff followed through with the medications recommended by Dr. Takacs. Second, the ALJ gave more weight to the opinion of examining physician Dr. Takacs because that opinion was more consistent with the record as a whole. See Andrews, 53 F.3d at 1040-41 ("greater weight is accorded to the opinion of an examining physician than a non-examining physician.") The ALJ's findings are supported by substantial evidence in the record as a whole. In sum, I conclude that the ALJ provided specific and legitimate

reasons for rejecting the opinion of non-examining physician Dr. McAuliffe. Tommasetti, 533 F.3d at 1041.

## III. Employment Specialist Lynne Carter

Under the social security regulations, only "acceptable medical sources" may establish an impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). "Other sources" may not establish the existence of a medically determinable impairment, but, the information from other sources may provide insight into the severity of a claimant's impairments and ability to work, especially where the evidence is complete and detailed. See 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p.

Plaintiff contends that the ALJ erroneously evaluated the opinion of Lynne Carter, an Employment Specialist with Rehabilitation Consultants, Inc., who conducted an assessment of plaintiff following her two-week work attempt through vocational rehabilitation. Ms. Carter noted that plaintiff has a strong skill set and would make a great employee, but for her irritable bowel syndrome causing absences. Ms. Carter noted that plaintiff worked only two hours of six before feeling sick. Tr. 448. As a result of Ms. Carter's report, vocational rehabilitation opined that plaintiff "feels she cannot work" and that plaintiff's nausea caused unpredictable absences indicating an inability to meet employer expectations. Tr. 447. Ms. Carter further opined that

because plaintiff's medical condition was not stable, she was "unable to work at this time." Id.

Because Ms. Carter was an "other source" under the regulations, the ALJ was required to provide a germane reason for discounting Ms. Carter's opinion. See, e.g., Bruce v. Astrue, 557 F.3d 1113, 1115-16 (9th Cir. 2009)(explaining standard for lay witness testimony); Turner, 613 F.3d at 1223-24. Additionally, an ALJ must explain why "significant probative" evidence has been rejected. Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

The ALJ thoroughly discussed the information from vocational rehabilitation and rejected Ms. Carter's opinion because it was based upon plaintiff's self-reported symptoms. As discussed above, I have concluded that the ALJ properly rejected plaintiff's subjective complaints. When an ALJ provides clear and convincing reasons for rejecting the credibility of plaintiff's own statements, and the lay testimony is based upon those statements, it follows that the ALJ has provided "germane" reasons. Valentine, 574 F.3d at 694. The ALJ did not err in rejecting Ms. Carter's opinion.

## IV.  Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. See Bruce, 557 F.3d at 1115; Stout

v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. Valentine, 574 F.3d at 694.

Plaintiff's daughter, Amanda Crist, provided an April 3, 2010, Third Party Function Report in which she reported that she spends time with plaintiff watching television, talking and shopping; that plaintiff's pain and nausea keep plaintiff from sleeping; that plaintiff is able to cook and take care of her small trailer; and that plaintiff's nausea and depression keep plaintiff home much of the time. In an April 2010 letter, Ms. Crist indicated that plaintiff's chronic nausea was her biggest barrier to employment.

The ALJ thoroughly discussed the information and letter provided by Ms. Crist in the decision and concluded that Ms. Crist's lay testimony largely echoed plaintiff's complaints, and was based on plaintiff's subjective symptoms.  The ALJ findings are wholly supported by substantial evidence in the record.  In light of my conclusion that the ALJ provided clear and convincing reasons to discredit plaintiff, it follows that the ALJ has provided germane reasons for rejecting the testimony of Ms. Crist. Valentine, 574 F.3d at 694.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.    This action is DISMISSED.

IT IS SO ORDERED.

DATED this 21 day of JANUARY, 2014.

Malcolm F. Marsh
United States District Judge

26 - OPINION AND ORDER